**John Willard HOWARD, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–02–412–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 19, 2004.

Travis E. Alley, Granbury, Richard Alley, Fort Worth, for Appellant.

Robert T. Christian, Dist. Atty. for Hood County, Granbury, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant John Willard Howard was convicted by a jury of the offense of criminal nonsupport, a state jail felony.[1] The jury assessed punishment at two years' confinement with no fine. In two points, Appellant challenges the legal and factual sufficiency of the evidence to support the jury's rejection of his affirmative defense that he could not provide support for his children.[2] We will affirm.

## I. FACTUAL BACKGROUND

After five years of marriage, Appellant divorced Lisa Ramirez in 1992. The court ordered Appellant to pay $50.00 each week for the support of their three children. According to Ramirez, Appellant had never made any of the court-ordered payments, and documents from the Tarrant County Child Support Office, which is charged with receiving and forwarding such payments from Appellant to Ramirez, likewise reflected that no payments had been made. Further, Hood County District Attorney's Office Investigator Thelbert Milsap testified that, between December 1998 and December 2001, Appellant made no child support payments. Because Appellant only challenges the legal and factual sufficiency of the evidence pertaining to his claimed inability to provide support for his children, we will forgo a more detailed factual discussion and will lay out the facts pertinent to his points in our analysis of those claims.

## II. LAW OF CRIMINAL NONSUPPORT

A person commits the offense of criminal nonsupport if he or she intentionally or knowingly fails to provide support for his or her child younger than eighteen years of age, or for his or her child who is the subject of a court order requiring that person to support the child.[3] While the State does not bear the burden of proving the defendant's ability to pay, "[i]t is an affirmative defense under [section 25.05] that the actor could not provide support for the actor's child." [4] The defendant has the burden of proving an affirmative defense by a preponderance of the evidence.[5]

## III. STANDARDS OF REVIEW

After outlining relevant facts in his brief, Appellant argues his sufficiency

1. *See* TEX. PENAL CODE ANN. § 25.05 (Vernon 2003).

2. The jury implicitly rejected Appellant's affirmative defense that he could not provide support for his children and found him guilty of criminal nonsupport as alleged in the indictment. *See id.* § 25.05(b).

3. *See id.* § 25.05(a); *Williams v. State,* 114 S.W.3d 920, 920 & n. 1 (Tex.Crim.App.2003).

4. TEX. PENAL CODE ANN. § 25.05(b); *see also* 6 MICHAEL B. CHARLTON, TEXAS PRACTICE SERIES: TEXAS CRIMINAL LAW § 14.5 (2d ed.2001) (describing history of section 25.05(b)'s enactment).

5. TEX. PENAL CODE ANN. § 2.04(d) (Vernon 2003).

points by citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996), and *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim. App.1981).[6] These cases generally govern legal and factual sufficiency review of elements of the offense on which the State carries the burden of proof at trial.[7] Neither Appellant nor the State address the proper standards of review that are applicable to this case.

## A. Legal Sufficiency Jurisdiction

Appellant challenges the legal and factual sufficiency of the evidence to support his affirmative defense that he could not provide support for his children—an implicit finding on which Appellant had the burden of proof at trial.[8] With respect to a legal sufficiency review of a jury's rejection of a criminal defendant's affirmative defense, there is not a consensus among the courts of appeals as to whether such a review is permissible.[9] Because there is confusion among the courts, and in light of *Zuniga v. State*, 144 S.W.3d at 484, 2004 WL 840786, at *7 (Tex.Crim.App. 2004), we reconsider the standard we applied in our unpublished decision *Gonzalez v. State*, 2–02–291–CR, 2003 WL 21101520, at *2 (Tex. App.-Fort Worth 2003), and more precisely set forth the proper legal standard of review for a criminal defendant's legal sufficiency challenge to the trier of fact's rejection of his or her affirmative defense.

We think it is helpful to provide a brief historical backdrop before turning to *Gonzalez*.[10] Eleven years before *Clewis*, in which the court of criminal appeals developed factual sufficiency review in criminal

---

**6.** The only other case Appellant cites is *Ward v. State*, 48 S.W.3d 383, 391 (Tex.App.-Waco 2001, pet. ref'd), in which the court held that the evidence was factually insufficient to support the jury's verdict.

**7.** *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (governing legal sufficiency); *Zuniga v. State*, 144 S.W.3d 477, 481–85, 2004 WL 840786, at *4–7 (Tex.Crim.App. Apr.21, 2004) (discussing the evolution of factual sufficiency review; analyzing *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000) and *Clewis*, 922 S.W.2d at 129, 134); *Burden v. State*, 55 S.W.3d 608, 612 (Tex.Crim.App.2001) (concerning legal sufficiency); *Griffin*, 614 S.W.2d at 158–59 (same).

**8.** *See* TEX. PENAL CODE ANN. §§ 2.04(d), 25.05(b).

**9.** *See, e.g., Patterson v. State*, 121 S.W.3d 22, 24 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd, untimely filed) (citing *Naasz v. State*, 974 S.W.2d 418, 421 (Tex.App.-Dallas 1998, pet. ref'd) and concluding that court of appeals lacked legal sufficiency review jurisdiction of affirmative defense on which defendant bore burden of proof); *Nolan v. State*, 102 S.W.3d 231, 237–38 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (addressing legal sufficiency issue); *Torres v. State*, 976 S.W.2d 345, 347 (Tex.App.-Corpus Christi 1998, no pet.) (addressing legal sufficiency); *Moranza v. State*, 913 S.W.2d 718, 723 (Tex.App.-Waco 1995, pet. ref'd) (addressing legal sufficiency for sake of argument); *Cover v. State*, 913 S.W.2d 611, 619 (Tex.App.-Tyler 1995, pet. ref'd) (addressing legal sufficiency); *Cooney v. State*, 803 S.W.2d 422, 425 (Tex.App.-El Paso 1991, pet. ref'd) (addressing legal sufficiency); *see also Roybal v. State*, No. 04–02–00647–CR, 2003 WL 22241629, at *1–2 (Tex.App.-San Antonio Oct.1, 2003, no pet.) (mem.op.) (not designated for publication) (addressing legal sufficiency); *Gonzalez v. State*, No. 2–02–291–CR, 2003 WL 21101520, at *2 (Tex.App.-Fort Worth Jun.23, 2003, pet. ref'd) (mem.op.) (not designated for publication) (addressing legal sufficiency); *Centell v. State*, Nos. 07–98–0344–CR & 07–98–0345–CR, 2000 WL 96246, at *4 (Tex.App.-Amarillo Jan.28, 2000, pet. ref'd) (not designated for publication) (addressing legal sufficiency for sake of argument); *Brena v. State*, No. 07–97–0429–CR, 1999 WL 606681, at *2 (Tex.App.-Amarillo Aug.11, 1999, pet. ref'd) (not designated for publication) (addressing legal sufficiency).

**10.** *See generally Moranza*, 913 S.W.2d at 721–724 (recounting the evolution of legal and factual sufficiency review in Texas).

cases, the court addressed "the proper standard of review to be used by the court[s] of appeals ... in criminal cases involving an affirmative defense." [11] *Van Guilder* rejected a factual sufficiency review standard and crafted a quasi-*Jackson* standard:

> [I]n reviewing a case involving an affirmative defense, the court of appeals must review the evidence on the affirmative defense by looking at the evidence in the light most favorable to the implicit finding by the jury with respect to such affirmative defense and then determine, by examining all the evidence concerning the affirmative defense, if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence. The court of appeals is limited in its review using this preponderance standard to evidence submitted on the issue of the affirmative defense in question. This review is called for when the defendant is contesting the sufficiency of the evidence to support his conviction because of his assertion that he adequately proved his affirmative defense. It is important to note that this analysis does not involve the appellate court in any fact finding function. *The test evaluates the legal sufficiency of the evidence using a legal standard.* There must be no reweighing or reclassifying of the evidence by the appellate court. [12]

Five years after deciding *Van Guilder*, the court of criminal appeals revisited and overruled *Van Guilder* in *Meraz*. [13] In *Meraz*, the court "reviewed the jury's failure to find the elements of the defendant's affirmative defense" and enunciated the factual sufficiency standard of review for such cases. [14] *Meraz* rejected a "prototype *Jackson* standard of review concerning questions of fact or questions concerning the great weight and preponderance of the evidence," reasoning that *Jackson's* standard "is not a constitutional standard imperative to determining whether a defendant sustained his burden of proof in presenting an affirmative defense." [15] In place of such a standard, *Meraz* adopted the civil standard used "when the jury fails to find affirmatively on an issue on which the appealing party had the burden of proof," holding that, the appellate court must determine whether, after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. [16]

While *Meraz* specifically permits factual sufficiency review, the question *Meraz* seemingly left unanswered is whether the court of criminal appeals, in overruling *Van Guilder*, intended for intermediate courts of appeals to review a factfinder's rejection of an affirmative defense solely under a factual sufficiency standard and to the exclusion of a legal sufficiency standard. [17] The *Meraz* court fashioned a fac-

---

**11.** *Van Guilder,* 709 S.W.2d 178, 179 (Tex. Crim.App.1985), *overruled by Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Crim.App.1990).

**12.** 709 S.W.2d at 181 (emphasis supplied); *see Moranza,* 913 S.W.2d at 722 (recognizing *Van Guilder's* "quasi-*Jackson* standard").

**13.** 785 S.W.2d at 155.

**14.** *Zuniga,* 144 S.W.3d at 482, 2004 WL 840786, at *4.

**15.** 785 S.W.2d at 152, 154.

**16.** *Zuniga,* 144 S.W.3d at 482, 2004 WL 840786, at *4 (citing *Meraz,* 785 S.W.2d at 155).

**17.** *See generally* 43 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE & PROCEDURE § 31.116 (2d ed.2001) (discussing whether *Meraz* overruled *Van Guilder* in toto).

tual sufficiency review standard concerning the rejection of a criminal defendant's affirmative defense at a time before *Clewis*, 922 S.W.2d at 129, drew a clear distinction between legal and factual sufficiency challenges in criminal cases, and *Meraz* enunciated that a court of appeals is "vested with the authority to review fact questions in criminal cases." [18]

Thus, in overruling *Van Guilder*, *Meraz* expressly permitted factual sufficiency review of the rejection of an affirmative defense—a review that *Van Guilder* did not allow. But *Meraz* was not faced with a legal sufficiency complaint and did not hold that a criminal defendant would be precluded from challenging the legal sufficiency of the evidence in support of the trier of fact's failure to find his or her affirmative defense. Simply put, neither *Van Guilder* nor *Meraz* addressed the legal sufficiency standard applicable to the rejection of a criminal defendant's affirmative defense because each decision—both of which predate *Clewis*—only analyzed if and how a defendant could challenge the factual sufficiency of the evidence supporting the jury's rejection of his or her affirmative defense.

■ We therefore disagree with the Houston (First District) Court of Appeals's interpretation of *Meraz* in *Patterson* that appellate courts lack legal sufficiency jurisdiction when a defendant seeks appellate review of a jury's failure to make a finding on an issue upon which the defendant carries the burden of proof, such as an affirmative defense.[19] Rather, in light of the development of legal and factual sufficiency review in criminal cases, we will follow the majority of Texas intermediate courts of appeals and will conduct a legal sufficiency review of the evidence pertaining to Appellant's affirmative defense that he could not provide support for his children.[20] Indeed, not to recognize the courts of appeals' authority to review a legal sufficiency complaint concerning a defendant's affirmative defense, as well as a factual sufficiency complaint, would ignore the legislature's action vesting the courts of appeals with intermediate criminal jurisdiction.[21]

### B. Proper Standard of Review

Having concluded that the court of criminal appeals has not dispatched with legal sufficiency review of a jury's failure to make a finding on a criminal defendant's affirmative defense, but by the same token has not provided clear guidance as to what the applicable standard is, we look to *Zu-*

---

18. 785 S.W.2d at 155.

19. 121 S.W.3d at 24.

20. *See Nolan*, 102 S.W.3d at 237–38; *Torres*, 976 S.W.2d at 347; *Moranza*, 913 S.W.2d at 723; *Cover*, 913 S.W.2d at 619; *Cooney*, 803 S.W.2d at 425; *see also Roybal*, 2003 WL 22241629, at *1–2; *Gonzalez*, 2003 WL 21101520, at *2; *Centell*, 2000 WL 96246, at *4; *Brena*, 1999 WL 606681, at *2.

21. *See* Tex. Const. art. V, §§ 5(b) ("The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals. The appeal of all other criminal cases shall be to the Courts of Appeal as prescribed by law."), 6(a) ("Said Court of Appeals shall have appellate jurisdiction coextensive with the limits of their respective districts . . . under such restrictions and regulations as may be prescribed by law. . . . Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law."); Tex.Code Crim. Proc. Ann. art. 4.03 (Vernon Supp.2004) ("The Courts of Appeals shall have appellate jurisdiction coextensive with the limits of their respective districts in all criminal cases except those in which the death penalty has been assessed."); *see also* 7A Michael J. McCormick et al., Texas Practice Series: Criminal Forms & Trial Manual § 95.01 (10th ed.1995) (discussing legislation authorizing intermediate appellate jurisdiction of criminal cases).

*niga* as a guidepost in determining the proper legal sufficiency standard.[22] In *Zuniga,* the court stated that "the burden of proof at trial dictates the standard of appellate review."[23]

Undoubtedly, the linkage between the burden of proof at trial and the appropriate standard of review on appeal provides the basis for *Jackson,* the seminal opinion concerning criminal legal sufficiency review.[24] *Jackson* recognized that consistent with fundamental due process requirements, no person may be convicted of a criminal offense unless criminal responsibility for the offense is proved beyond a reasonable doubt.[25] Thus, *Jackson* rejected a no-evidence standard of review and required courts to determine not whether there is *any* evidence to support a state-court conviction, but to determine whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt.[26] That guilt must be proved beyond a reasonable doubt dictates the legal sufficiency standard of appellate review.[27]

■ As *Meraz* recognizes, neither *In re Winship* nor *Jackson* "deal[ ] with due process requirements concerning the sufficiency of proof or the appellate review of an affirmative defense."[28] A criminal defendant's burden on a requested affirmative defense is proof by a preponderance of the evidence.[29] In rejecting a quasi-*Jackson* standard for factual sufficiency challenges to affirmative defenses, *Meraz* adopted the civil appellate standard of factual sufficiency review, which is based upon the preponderance of the evidence burden of proof, applicable in most civil trials.[30] The court therefore linked the preponderance of the evidence burden of proof to the civil standard of appellate review.[31]

■ Because *Meraz* draws from civil law in linking factual sufficiency review of a rejected affirmative defense to the preponderance of the evidence burden of proof at trial, it logically follows that the appropriate legal sufficiency standard of review is likewise found in civil law, in cases in which the burden of proof at trial is proof by a preponderance of the evidence.[32] Under the civil standard, if an appellant is attacking the legal sufficiency of an adverse answer to an issue on which he or she had the burden of proof, the

---

22. 2004 WL 840786, at *7.

23. *Id.* (agreeing with the Supreme Court of Texas's linking of clear and convincing evidence burden of proof in termination proceedings to altered appellate standard of factual sufficiency review in *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002)); *see also In re J.F.C.,* 96 S.W.3d 256, 265 (Tex.2002) (holding that clear and convincing evidence burden of proof in termination cases alters the appellate standard of legal sufficiency review).

24. 443 U.S. at 319, 99 S.Ct. at 2789.

25. U.S. Const. Amend. XIV; *Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89 (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970)).

26. *Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89.

27. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Zuniga,* 144 S.W.3d at 484, 2004 WL 840786, at *7.

28. 785 S.W.2d at 152.

29. TEX. PENAL CODE ANN. § 2.04(d).

30. 785 S.W.2d at 154–55.

31. *See Zuniga,* 144 S.W.3d at 484, 2004 WL 840786, at *7; *Meraz,* 785 S.W.2d at 154–55.

32. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

appellant must overcome two hurdles.[33] First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law.[34] We hold that the *Sterner* standard is the proper legal standard of review for a criminal defendant's legal sufficiency challenge to the trier of fact's rejection of his or her affirmative defense.[35]

## C. Reconsideration of *Gonzalez*

Upon a closer examination of the post-*Meraz* cases allowing a legal sufficiency review of a rejected affirmative defense, we observe that there also exists a lack of consensus in the courts of appeals as to the proper legal sufficiency standard of review to be applied. Several decisions, including *Moranza* and *Cover*, apply the *Sterner* standard in determining whether an appellant established his or her affirmative defense as a matter of law.[36] In *Cooney*, the El Paso Court of Appeals, however, states the standard of review as follows:

> When a defendant contends on appeal that he met his burden of proof as a matter of law, without evidentiary conflict, the appellate court should review

all of the evidence bearing on the issue, in a light most favorable to the verdict, to determine if there was a basis upon which the jury could *rationally* reject the defense contention.[37]

The court provides no citation for this standard, but the language suggests that the court applied a modified-*Jackson* standard.[38] In *Gonzalez*, we cite *Moranza*, *Cover*, and *Cooney*, but we rely solely on *Cooney's* language in stating the legal sufficiency standard of review: "In examining the legal sufficiency of the evidence supporting an affirmative defense, we review all the evidence in the light most favorable to the verdict and sustain the challenge only if there is no rational basis upon which the jury could have rejected the defense."[39]

For the reasons mentioned above, a modified-*Jackson* standard is inappropriate in reviewing the rejection of an affirmative defense.[40] Accordingly, while *Gonzalez* properly relies on *Moranza* and *Cover*—as they apply the *Sterner* civil standard—we conclude that Gonzalez's reliance on *Cooney's* modified-*Jackson* standard is misplaced.[41] Although *Gonzalez* cited the correct legal sufficiency review standard in part, we overrule *Gonzalez* to the extent we relied on *Cooney* and applied a modified-*Jackson* standard.[42]

---

33. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991).

34. *Id.*; *Sterner*, 767 S.W.2d at 690.

35. 767 S.W.2d at 690.

36. *See Nolan*, 102 S.W.3d at 237–38; *Moranza*, 913 S.W.2d at 723; *Cover*, 913 S.W.2d at 619; *see also Centell*, 2000 WL 96246, at *4; *Brena*, 1999 WL 606681, at *2.

37. 803 S.W.2d at 425.

38. *See id.*

39. 2003 WL 21101520, at *2 & n. 5; *see also Torres*, 976 S.W.2d at 347 (citing *Moranza*,

*Cover*, and *Cooney* and relying on *Cooney's* standard); *Roybal*, 2003 WL 22241629, at *1–2 (applying modified-*Jackson* standard).

40. *Meraz*, 785 S.W.2d at 152.

41. *See* 2003 WL 21101520, at *2.

42. While we recognize that *Gonzalez* concerns the defensive issue of entrapment, our limited holding in this case does not address the propriety of *Gonzalez's* characterization of entrapment as an affirmative defense. *Compare* TEX. PENAL CODE ANN. § 8.06 (stating that entrapment is a "defense"), *Flores v. State*, 84 S.W.3d 675, 680–81 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (analyzing entrapment

## D. Factual Sufficiency Standard

■ With respect to factual sufficiency review of a rejected affirmative defense, *Meraz* provides that we must consider all the evidence relevant to the point of Appellant's ability to provide support for his children and determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust.[43] In our review, we may not usurp the function of the jury by substituting our judgment in the place of its verdict.[44] We may only sustain Appellant's factual sufficiency claim if, after detailing the relevant evidence and stating in what regard the contrary evidence greatly outweighs the evidence supporting the verdict, we also clearly state why the verdict is so against the great weight of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias.[45]

## IV. APPLICATION OF LAW TO THE FACTS

■ We first examine the record for evidence supporting the jury's implicit finding that Appellant could provide support for his children.[46] During trial, Ramirez testified that Appellant received supplemental security income (SSI) in the estimated amount of $440 per month. Ramirez also stated that because Appellant received the family amount, she did not receive any money from SSI. She also testified that, while Appellant spent some time in prison, he received between $600 and $1,000 a month from rental property. According to Ramirez, Appellant routinely and intentionally "got hurt" while working so that he could sue his employers. In fact, Ramirez testified that Appellant settled one case for $43,000.

The State also offered into evidence Appellant's 1999 judgment of conviction for the offense of criminal nonsupport.[47] Further, Appellant's friend and former employer David Hinkle testified that Appellant could work and that he had paid Appellant cash for "odd jobs." When asked, "Was this to help him support his family," Hinkle stated, "Yes."

We conclude that this evidence supports the jury's failure to find that Appellant could not provide support for his children, and we need not reach *Sterner's* second hurdle.[48] Thus, we hold that the evidence

---

legal sufficiency issue), *and Barnes v. State*, 70 S.W.3d 294, 304–05 (Tex.App.-Fort Worth 2002, pet. ref'd) (*discussing "defense of entrapment"*), *with Gonzalez*, 2003 WL 21101520, at *2 (characterizing entrapment as an affirmative defense), *and Marlow v. State*, 730 S.W.2d 845, 847 (Tex.App.-Fort Worth 1987, pet. ref'd) (stating that "[e]ntrapment, by its nature, is an affirmative defense").

**43.** 785 S.W.2d at 155.

**44.** *See id.* at 154.

**45.** *Id.* at 154 n. 2; *see Zuniga*, 144 S.W.3d at 481, 2004 WL 840786, at *4.

**46.** *See* TEX. PENAL CODE ANN. § 25.05(b); *Sterner*, 767 S.W.2d at 690.

**47.** We observe that Appellant did not object to the introduction of his conviction, and he stated, "No objection" after the State offered the record of his conviction. The State questioned Ramirez about Appellant's conviction and then offered Appellant's penitentiary packet, at which time Appellant objected under rules of evidence 403 and 404. The trial court overruled Appellant's objection, and the State proceeded to question Ramirez about Appellant's prior conviction and sentence, which was probated and then later revoked upon Appellant's conviction for involuntary manslaughter. Appellant, however, does not complain on appeal about the admission of evidence pertaining to his prior criminal nonsupport conviction.

**48.** *See Sterner*, 767 S.W.2d at 690; *Moranza*, 913 S.W.2d at 723; *Cover*, 913 S.W.2d at 619.

is legally sufficient to support the jury's adverse finding on Appellant's affirmative defense. Accordingly, we overrule Appellant's first point.

■ We also conclude that the jury's failure to find that Appellant could not provide support for his children is not against the great weight and preponderance of the evidence.[49] Appellant points to the following evidence in support of his factual sufficiency claim: Ramirez testified that for nine months the children lived with Appellant, and she stated that Appellant "fed them [out of] dumpsters" and provided shelter for them, but did not clothe them. Ramirez also testified that neither she nor the children had received any gifts, presents, or things of value from Appellant since the divorce, but she testified that Appellant's second ex-wife bought the children televisions from Wal–Mart.

Ramirez agreed that Appellant was incarcerated between 1998 and August 2000. Appellant admitted documents from two different physicians that detailed his disabled status, but Ramirez maintained that Appellant was faking his injuries. Appellant attempted to rebut Ramirez's claims that he was faking his injuries by showing the nature and extent of his disabilities and his inability to work while he was in jail.

Hinkle testified that Appellant cared for his children but that "they didn't have a lot of . . . financial resources." Hinkle stated that he "knew [Appellant] was disabled since 1990." While Hinkle testified that Appellant had a back injury, he also stated that Appellant could work.

Hinkle also testified that Appellant was illiterate, could not write, and could not "comprehend . . . Mapscos." On cross-examination, the State offered into evidence a letter written by Appellant to Hinkle, a letter that Hinkle admitted was a request for Hinkle "to slant [his] testimony toward[ ] [Appellant]." Appellant's letter to Hinkle reads in pertinent part as follows:

David, here's what I need you to do, if it comes down to it, if they say I worked for you, then I need you to tell them I only worked there on Holidays and when I just needed extra cash every now and then. And also that I took care of my kids the best to be expected from the best of a father.

. . . .

These people are trying to say I'm able to work, which we all know I can't do this. I am disabled. So anything you would say would help in my case, that I only did very little, if you know what I mean.

Appellant also called his sister Diane Gray and his nieces Tonya and Sonja Gray, who testified about Appellant's disabilities, his concern for his children, and his inability to provide financial support to them.

In rebuttal, to show that Appellant could have provided support to his children, the State called Appellant's son to the stand who testified that he had lived with Appellant for nine months, while Ramirez was incarcerated. The State also called Bill Wiley, who worked as the interim jail administrator while Appellant was incarcerated. Wiley testified that Appellant volunteered to work as a trusty when he was in jail and did the following type of work: "working the floors, working the hallway, fixing mop buckets for inmates, sweeping and mopping." Wiley agreed that after Appellant reported pain to a doctor, he did not continue working as a trusty. Appellant asked Wiley, "And that was because he couldn't do the work, right?" Wiley responded, "I suppose that would be true."

**49.** *See Meraz,* 785 S.W.2d at 155.

After carefully reviewing the entire record, we cannot say that the evidence tending to show that Appellant could not provide support for his children is of such great weight and preponderance that the jury's failure to find that Appellant could not provide child support for his children is manifestly unjust.[50] We therefore hold that the evidence is factually sufficient to support the jury's rejection of Appellant's affirmative defense. Accordingly, we overrule Appellant's second point.

## V. CONCLUSION

Having overruled both of Appellant's points, we affirm the trial court's judgment.